IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| **BERNARD LERICHE** | : | HEARING: December 4, 2025 – 11:00 AM |
| Debtor | : | No. 25-12046(djb) |

**MEMORANDUM of PHILADELPHIA FEDERAL CREDIT UNION in opposition to <u>DEBTOR'S MOTION for RECONSIDERATION of ORDER GRANTING STAY RELIEF</u>**

Philadelphia Federal Credit Union (**"PFCU"**), by its undersigned counsel, offers the following brief, in opposition to the Debtor's Motion for Reconsideration of the Court's Order granting PFCU relief from the Automatic Stay (Docket #38).

I.   INTRODUCTION

This Chapter 13 case was commenced on May 23, 2025. The Debtor did not file schedules or a Chapter 13 Plan until July 10th. On July 30, 2025, PFCU filed a Motion for Relief from the Automatic Stay (Docket #25) because it had received no post-petition payments from the Debtor, though payments of $1,009.17 each were due on June 6, 2025 and July 6, 2025, with another such payment to come due on August 6, 2025, before the scheduled hearing on the Motion on September 4, 2025, and an additional payment to come due on September 6, 2025. The Motion also averred that, on information and belief, the mortgaged property was uninsured.

The Debtor filed a response in opposition to the Motion, and the hearing on the Motion was continued several times, by agreement, ultimately to October 16, 2025.

On October 15, 2025, the Debtor (through counsel) withdrew his response to the Motion, and PFCU filed a Certification of No Response, and at the hearing the following day, the Court entered an Order granting PFCU relief from the automatic stay to proceed with its Sheriff's Sale, which was at the time scheduled for October 10, 2025.

The Sheriff's Sale was postponed to December 12, 2025 by agreement, and on October 27, 2025, the Debtor filed an expedited Motion "to Reconsider [the] Stay Relief Order, which was heard on November 13, 2025.

At the November 13th hearing, the Court was uncertain whether the Debtor's Motion was the proper procedural vehicle to obtain the relief requested – reimposition of the automatic stay. The Court requested briefs on the issue. This is PFCU's brief.

## II.     THE RULES DO NOT MENTION a "MOTION for RECONSIDERATION"

There is no reference to a "Motion for Reconsideration" in the Federal Rules of Bankruptcy Procedure. The nearest analogues are found in Bankruptcy Rules 9023 ("New Trial; Altering or Amending Judgment"), which largely incorporates Federal Rule of Civil Procedure 59, and 9024 ("Relief from a Judgment or Order"), which largely incorporates Federal Rule 60.

## III.    THE DEBTOR'S MOTION DOES NOT SATISFY RULE 9023

Bankruptcy Judge Chan applied Rule 9023 to a Motion for Reconsideration in a case entitled *In re: Marinari*, 596 B.R. 809 (Bankr., E.D. Pa., 2019). Here is what she wrote[1]:

> It is well settled that a "motion for reconsideration" is the "functional equivalent" of a motion to alter or amend judgment under Rule 59(e). ***Ironworks Patents, LLC v. Apple, Inc.***, 255 F. Supp. 3rd 513, at 521 (D. Del., 2017). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. ***Fountain v. Vaughn***, 679 Fed. Appx. 117, at 119 (3rd Cir., 2017); ***McSparran v. Pennsylvania***, 289 F. Supp. 3rd 616, at 621 (M.D. Pa., 2018).
>
> Accordingly, a motion for reconsideration may only be granted if the party seeking reconsideration shows (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or fact or prevent manifest injustice. ***Degussa v. Materia, Inc.***, 305 F. Supp. 3rd 563, at 575 (D. Del., 2018) (citing ***N. River Ins. Co. v. CIGNA Reins. Co.***, 52 F.3rd 1194, at 1218 (3rd Cir., 1995); ***Einhorn v. Kaleck Bros., Inc.***, 713 F. Supp. 2nd 417, at 426 (D. N.J., 2010).
>
> The movant bears a high burden to demonstrate that grounds exist justifying this extraordinary remedy. ***In re Sellers***, 555 B.R. 479, at 481-82 (Bankr.,

---

[1] Reformatted here only for clarity.

E.D. Pa., 2016; Frank, Ch. J.).

It is clear that no relief is available in this case under Rule 9023. The law did not change. There was no "clear error of law or fact" nor any "manifest injustice" in the granting of stay relief; indeed, the stay relief motion was granted as unopposed after the Debtor, through counsel, withdrew his opposition to it.

It appears from the Debtor's Motion that he may be relying upon the "newly-discovered evidence" prong of the Rule 9023 standard.[2] Unfortunately, this strategy cannot provide relief.

"The term 'newly discovered evidence' refers to 'evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant.' **Bohus v. Beloff**, 950 F. 2nd 919, at 930 (3d Cir., 1991)." **In re: Vascular Access Centers, L.P.**, 645 B.R. 804, at 828 (Bankr., E.D. Pa., 2022, Chan, B.J.).

Though the **Vascular** court treated the reconsideration motion there as having been brought under Rule 60 [B.R. 9024], it went on to note that "…Rule 59(e) and Rule 60(b)(2) share the same standard for granting relief on the basis of new evidence." **Ibid.** Reconsideration was denied.

Here, the Debtor admittedly made his past-due post-petition payments and obtained insurance coverage <u>after</u> stay relief had already been granted.[3] Those facts are not "newly-discovered evidence" and the Debtor is not entitled to have the automatic stay reimposed on that basis under either rule[4].

**IV.   THE DEBTOR'S MOTION DOES NOT SATISFY RULE 9024**

In the **Vascular** case, Judge Chan also considered whether the Motion for Reconsideration

---

[2]   "Because the grounds for relief no longer exist, the Debtor requests that the Court reconsider its order granting relief from the automatic stay." Motion, at ¶5.

[3]   "Since relief was granted, the Debtor has obtained insurance and become substantially current on post-petition payments." Motion, at ¶4.

[4]   Similarly, Rule 9052, applying Federal Rule of Civil Procedure 52, is also unavailing, in large part because the stay relief order was granted as unopposed. Strictly speaking, the court made no findings in granting it.

filed there could be granted pursuant to Federal Rule 60, incorporated into bankruptcy practice by B.R. 9024. Judge Chan held that it could not:

> Pursuant to Rule 60(b), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:...(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)..."[5]  " Rule 60(b) does not confer upon the district courts a 'standardless residual discretionary power to set aside judgments.' Rather, '[t]he remedy provided by Rule 60(b) is extraordinary and special circumstances must justify granting relief under it.' " In re Express Car & Truck Rental, Inc., 455 B.R. 434, 439 (Bankr. E.D. Pa. 2011). " Rule 60(b) is not read liberally to give a disappointed party an opportunity to relitigate his or her case [or]...present facts that were otherwise available at the time of judgment." Id.

As discusssed above, the term "newly discovered evidence" refers to "evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant…" and not a <u>change</u> in the facts after the pending matter has already been decided.

Relief under B.R. 9024 is likewise unavailable on these facts.

V.     SO WHAT IS LEFT?

It appears that the only recourse remaining available to the Debtor is an adversary proceeding to reimpose the automatic stay pursuant to 11 U.S.C. §105. B.R. 7001 provides that certain specified types of relief are only available through the filing and prosecution of an adversary proceeding:

> "Rule 7001. Types of Adversary Proceedings
>          *       *       *
> "(g)    a proceeding to obtain an injunction or other equitable relief—except when the relief is provided in a Chapter 9, 11, 12, or 13 plan…."
>          *       *       *

A proceeding to reimpose the automatic stay, in effect, seeks an injunction, pursuant to 11

---

[5] The only portion of Rule 60 relevant to this analysis is subsection 2, which sets forth the bases upon which Rule 60 relief may be granted, and the only part of that subsection applicable here is paragraph 2, "newly discovered evidence".

U.S.C. §105.  *In re: Williams,* 346 B.R. 361, at 371 (Bankr., E.D. Pa., 2006; Fox, J.).  "[T]he bankruptcy court, upon proper application and satisfaction of applicable standards, may reimpose the stay pursuant to its injunctive powers under §105(a)."  *Ibid*.  *See also,* *In re: Orfa Corp.*, 170 B.R. 257, at 267 (E.D. Pa., 1994).  Therefore, an adversary proceeding is required[6].

The Court must therefore find that the following grounds exist:

    (a)    a substantial likelihood of success on the merits;

    (b)    irreparable harm to the movant absent the injunction;

    (c)    that the harm to the movant outweighs harm to the nonmovant; and

    (d)    that injunctive relief does not violate the public interest.

*In re: Ganim*, 2007 WL 880598 (Bankr., D. NJ, 2007)(unreported; copy attached).

In this context "a substantial likelihood of success on the merits" means "a substantial likelihood that the Debtor will continue making post-petition payments."  Given his difficulty doing so to date, the Debtor will likely be hard-pressed to make the necessary showing.

In addition, as set forth in PFCU's earlier filings, it appears that the Debtor – despite what his Petition says – does not reside in the property at issue.  That weighs against the "irreparable harm" and the greater harm/lesser harm portions of the equation[7].

## VI.  CONCLUSION

Satisfying the grounds to obtain injunctive relief is, of course, the Debtor's burden.  With a Sheriff's Sale scheduled for December 12, 2025, there is little time to take a "wait and see" approach to determine whether the Debtor can meet his obligations on an ongoing basis, and the fact that the Debtor is now "under the gun" is not attributable to any action or omission of PFCU.

In short, the Debtor is not entitled to a "do over".

---

[6]     With that said, the form of proceeding would appear to be much less important than the Debtor's ability to meet the required standards, which is – at best – questionable.

[7]     The "public interest" factor in this analysis appears neutral.

PFCU therefore respectfully requests that reconsideration – however denominated – be denied.

                              Respectfully submitted,

                              **KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By:    */S/ William J. Levant, Esquire*
        William J. Levant, Esquire
        910 Harvest Drive, 2nd Floor
        Post Office Box 3037
        Blue Bell, PA 19422
        (610) 941-2474
        (610) 684-2020 – Telecopier
        wlevant@kaplaw.com
        Attorneys for Philadelphia Federal Credit Union

Date: November 21, 2025

🚩 KeyCite Yellow Flag

Distinguished by U.S. v. Falcone, D.N.J., March 31, 2010

2007 WL 880598
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States Bankruptcy Court, D. New Jersey.

In re Kathleen J. GANIM, Debtor.

No. 06–10762 (NLW).
|
March 21, 2007.

**Attorneys and Law Firms**

Dean G. Sutton, Esq., Sparta, NJ, Counsel for Debtor.

Mario Serra, Jr., Esq., Fein, Such, Kahn & Shepard, PC, Parsippany, NJ, Counsel for Washington Mutual Bank, FA.

James D'Alessandro, Esq., Muscarella, Bochet, Edwards, et al, Fair Lawn, NJ, Counsel for Trustee.

Matthew M. Fredericks, Esq., David Kessler & Associates, LLC, Clifton, NJ, Counsel for 429 Gregory Associates, LLC.

**Opinion**

NOVALYN L. WINFIELD, J.

**\*1** This matter is before the Court on the Debtor's motion to reimpose the stay and vacate the Court's earlier order which granted relief from the automatic stay to the Debtor's mortgagee. The purpose of the Debtor's motion is to render void the Sheriff's sale of the Debtor's real property. The mortgagee and the purchaser of the real property at the Sheriff's sale oppose the Debtor's motion. As set forth at greater length below, the Court finds that under 🚩Federal Rule of Civil Procedure 60(b)(1), the order granting relief from the automatic stay is vacated, and pursuant to 11 U.S.C. § 105(a), the automatic stay is reimposed.

### JURISDICTION

The Court has jurisdiction to review and determine this matter pursuant to 🚩28 U.S.C. §§ 1334 and 🚩157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984.

This is a core proceeding under 🚩28 U.S.C. § 157(b)(2)(A) and (G). The following constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### STATEMENT OF FACTS

On February 3, 2006, Kathleen J. Ganim ("Debtor"), acting pro se, filed a Chapter 13 petition. The filing of the Chapter 13 petition automatically stayed the foreclosure sale for real property known as 429 Gregory Avenue, Weehawken, New Jersey (the "Property") that was scheduled for February 9, 2006.

The Debtor's Chapter 13 Plan proposed two alternative means for satisfying her debts. The Plan provided for payments of $1,100 per month for 49 months, and alternatively provided for funding the Plan by a sale or refinance of the Property. Ultimately, on June 29, 2006, an Order Confirming Plan was entered. That order provided for payments to the Trustee of $3,399.39 for four (4) months, and then the sum of $1,163.00 for 54 months. The order also provided for a sale or refinance of the property within twelve (12) months of the Confirmation Hearing or the case would be dismissed. Thus, it appears that sale of the Property was always an option contemplated by the Debtor.

Not long after the case was commenced, Washington Mutual Bank, FA ("WaMu") as servicer for Wachovia Bank, N.A., a National Banking Association, as Trustee for Long Beach Mortgage Loan Trust 2002–2, filed a motion for relief from stay because the Debtor had not made post-petition payments. The Debtor and WaMu agreed upon terms for curing the post-petition default which were embodied in an Order to Cure Post–Petition Default and Providing for Adequate Protection ("Cure Order") signed by the Court on June 1, 2006.[1] In addition to the payment terms, the Cure Order provided that if the Debtor failed to make her monthly payments for a period of thirty (30) days, WaMu could give notice to the Court and the Debtor and obtain stay relief. The order also contained a provision stating that "any conversion of said bankruptcy to another chapter shall not impede upon the ability of the secured creditor to continue with its State Court action."

[1]   The Debtor states that at the outset of the case she did not make her post-petition mortgage payments

because she did not know whom to pay or where to send her payments.

**\*2** Unfortunately, the Debtor was not able to timely make her post-petition payments to WaMu. The Debtor attributes her default to the fact that she was laid off in August, 2006. However, from the WaMu certification of default filed of September 5, 2006, it appears that the default began with the June, 2006 payment, which was returned for insufficient funds. The Certification of Default listed four past due payments, inclusive of the September payment, plus late charges and a returned check fee for a total of $7,773.42, as of September 1, 2006. Because of the amount of the default and the fact that the Debtor did not object to entry of default, on September 18, 2006, the Court entered an order granting relief from the automatic stay ("Stay Relief Order").

Freed from the automatic stay, WaMu recommenced its efforts to foreclose on the Property. A Sheriff's Sale was scheduled for November 16, 2006, but was adjourned to November 30, 2006, as a consequence of the Debtor's exercising of her statutory right to request an adjournment. She also exercised her second (and final) statutory right to adjourn the sale, and the Sheriff's Sale was adjourned to December 14, 2006. On December 14th, the sale went forward, and the Property was sold to 429 Gregory Associates, LLC for the sum of $434,000.00.

The Debtor's response to the foreclosure sale of the Property was twofold. She first filed correspondence with the Court on December 20, 2006, requesting withdrawal of her bankruptcy case so that she could redeem her Property. The Debtor stated that she had a purchaser for the Property who was offering a sum greater than that paid at the foreclosure sale.

The Debtor apparently rethought her request, because two days later, and now represented by counsel, the Debtor filed a Motion to Reimpose the Automatic Stay. The Debtor's motion to reimpose the stay was supported by Barbara Edwards, as the Chapter 7 Trustee ("Trustee"). It appears that on December 8, 2006, the Debtor filed a Notice of Voluntary Conversion to Chapter 7. Unfortunately, it appears that the United States Trustee did not act on the conversion until December 18, 2006, when Ms. Edwards was appointed. The Trustee therefore was not apprised of the Sheriff's Sale until after it occurred.

The Debtor advances several facts which she claims warrant vacating the Stay Relief Order. First, she claims that she did not receive either the WaMu certification of default or the Stay Relief Order. Second, she claims that she did not become aware that the stay was vacated and that the Sheriff's Sale had been scheduled until she received a mailing from an entity that offered to help her save her home. Third, she claims that she believed that her voluntary conversion to Chapter 7 would cause the automatic stay to be reimposed. Fourth, she claims that her tenant James Fukuda ("Fukuda") has offered to purchase the Property for $630,000.00. Fukuda submitted a certification in which he confirms the purchase price and states that he has $180,000.00 available, and will apply for a $550,000.00 mortgage. The Debtor states that WaMu is only owed $200,000.00, and thus she estimates that if the Deed is delivered, she will lose equity of at least $200,000.00. Finally, the Debtor states that she believes that the Sheriff's Sale may be void because she claims that she was not served with the advertisement of the Sheriff's Sale.

**\*3** Additionally, at the hearing on the Debtor's motion, her counsel proffered that the language of the Stay Relief Order stating "that the movant may join the debtor and any trustee appointed in this case as defendants in its foreclosure action(s) irrespective of any conversion to any other chapter of the Bankruptcy Code," did not clearly state that conversion to another chapter would not stay the sale. Accordingly, he argued that the Debtor's misapprehension regarding the existence of the automatic stay was understandable.

As a factual matter, the Court has difficulty with the credibility of the Debtor's claim that she was not served with the certification of default or the Stay Relief Order. WaMu's certification of service for the certification of default shows service made on the Debtor at 429 Gregory Avenue, Weehawken, New Jersey. The Court's certificate of service similarly shows that the Stay Relief Order was mailed to the Debtor at the aforementioned address. This is the address listed by the Debtor on her petition, and she has not submitted any change of address. Nor does she complain that she has not received other bankruptcy notices or even other mailings. In the absence of some fact demonstrating irregularity in the mail delivery, the Debtor's bare allegation of non-receipt appears self-serving and not credible.

Moreover, the Debtor's contention regarding her knowledge that relief from the automatic stay had been granted, is something of a red herring. By her own statements she plainly knew about the November 16, 2006 Sheriff's Sale, and after she adjourned it to November 30, 2006, the Debtor could have acted to reimpose the stay, but did nothing until she filed her voluntary conversion on December 8, 2006. The Debtor's

mistaken belief that her voluntary conversion of her Chapter 13 case to a Chapter 7 case acted to reimpose the automatic stay has somewhat more substance, since she was acting *pro se*.

At oral argument, WaMu argued that the language of the motion to vacate the stay and the Stay Relief Order which followed were clear in that the debtor could not have reasonably believed that the Sheriff's Sale would not go forward because the Stay Relief Order did not explicitly state that conversion will not reimpose the automatic stay. WaMu also contends that the Sheriff's Sale was properly conducted and that the alleged inadequacy of the sale price (here the price was well below fair market value) is insufficient to overturn the sale.

At oral argument, 429 Gregory Associates argued that the Debtor's motions prejudices it in that it is prevented from completing its purchase. Furthermore, it argues that the state court is the proper forum to object to the sale.

Perhaps the most compelling argument made in favor of vacating the Stay Relief Order arises from the simple fact that the United States Trustee did not appoint the case Trustee until *after* the Sheriff's Sale occurred. As Trustee's counsel observed, the United States Trustee's failure to timely appoint the Trustee meant that the Trustee had no opportunity to seek reimposition of the automatic stay in order to preserve the value of the Property for creditors. A review of the Proof of Claim register reveals that there are several unsecured creditors whose claims approximate $9,783.98. They will only receive payment if the Chapter 7 Trustee has the opportunity to sell the Property.

### DISCUSSION

**\*4** Counsel for the Debtor grounds his request to vacate the Stay Relief Order and to reimpose the automatic stay on Federal Rule of Civil Procedure ("Rule") 60(b)(1) and (6). The Rule provides in pertinent part that:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgement, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b)(1), 60(b)((6).

The Court does not find that Rule 60(b)(6) is applicable to the matter at hand because the factual circumstances alleged by the Debtor fall well within the grounds for relief set forth in Rule 60(b)(1). In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership et al.,* 507 U.S. 380 (1993), the Court examined the meaning of the term "excusable neglect" contained in Bankruptcy Rule 9006 in light of the meaning ascribed to that term in various other procedural rules. With regard to Rule 60, it specifically observed that (b)(1) and (b)(6) are mutually exclusive and that a party that fails to act timely due to inexcusable neglect may not seek relief from judgment more than a year later under (b)(6). 507 U.S. at 393. Most importantly for the matter at hand the Court elaborated that:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. (citations omitted). If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable.

507 U.S. at 393. *See also, United States v. Cirami et al.,* 563 F.2d 26, 32 (2d Cir.1977)(relief under clause (6) is available only when the movant acts in a timely fashion and asserts a ground justifying relief that is not a ground encompassed within any of the first five clauses.); *Stradley v. Cortez,* 518 F.2d 488, 494 (3d Cir.1975)(Rule 60(b)(6) is available only in cases evidencing extraordinary circumstances ... and only when the relief sought is based upon "any other reason" than a reason which would warrant relief under 60(b)(1–5)).

In the instant matter, the Debtor claims that the Stay Relief Order should be vacated because (i) she was acting *pro se* until recently, (ii) she did not receive a copy of the Stay Relief Order, (iii) she didn't understand that conversion of Chapter 13 case to a Chapter 7 case would not reimpose the stay, and (iv) she didn't receive notice of the Sheriff's Sale until just prior to the first scheduled sale date. Some of the grounds stated by the Debtor simply lack sufficient weight. For example, as stated earlier, the Debtor's contention that she did not receive a copy of the Stay Relief Order and did not receive notice of the Sheriff's Sale appear to the Court to be makeweight arguments, as she had sufficient notice of the sale to adjourn it twice. Her strongest contention is that as a *pro se* Debtor she did not fully comprehend the consequences of her actions (or nonactions). Consequently, the circumstances set forth by the Debtor do not describe "extraordinary circumstances, but rather fall within the scope of Rule 60(b)(1) as constituting either "mistake, inadvertence, surprise or excusable neglect."

**\*5** However, the most compelling fact in favor of using Rule 60(b)(1) to vacate the Stay Relief Order is that the Chapter 7 Trustee was not appointed by the United States Trustee until four days *after* the Sheriff's Sale occurred. Consequently, the party charged with the responsibility under 11 U.S.C. § 704 to "collect and reduce the money for the property of the estate," had no opportunity to act to preserve the most important asset of the bankruptcy estate. With the Stay Relief Order vacated, and the automatic stay reimposed, the Trustee can be afforded the opportunity to consider Fukuda's offer to purchase the Property and create a fund from which unsecured claims, as well as secured claims can be paid in full. This result fulfills the bankruptcy goal of payment to as many classes of creditors as possible.

A number of courts have recognized that relief under Rule 60(b)(1) is appropriate where court error or inadvertence has cause the need for relief from an order or a deadline. *See, Brandon v. Chicago Board of Education,* 143 F.3d 293 (7th Cir.1998)(clerk's mailing of court orders to wrong attorney at wrong address considered under 60(b)(1), but motion to vacate order ultimately denied because not brought within one year of entry); *Travelers Indemnity Co. v. Stedman, et al.,* 925 F.Supp. 345 (E.D.Pa.1996)(Rule 60(b)(1) applied to correct judicial mistake of fact). The United States Trustee's inadvertent failure to timely appointment the case Trustee certainly falls well within the scope of this case authority.

Vacating the Stay Relief Order results in the stay being revived effective as of September 18, 2006. Consequently the Sheriff's Sale on December 14, 2006 must be considered as void. *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1206 (3d Cir.1991)(Absent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio); In re Ward,* 837 F.2d 124, 126 (3d Cir.1988)(Sheriff's sale conducted in violation of the stay is void and without effect).

Additionally, under *In re Wedgewood Realty Group, Ltd.,* 878 F .2d 693, 702 (3d Cir.1989), the Court has the power to reimpose the stay under authority of 11 U.S.C. § 105(a). To do so the Court must find that the following grounds for injunctive relief have been met: substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief does not violate the public interest. *Id.,* at 700–701. All of these criteria are met in this case. A proposed purchaser stands ready to make an offer for the Property that will pay all claims. It is also likely that there will be funds remaining which can be paid to the Debtor. Accordingly, she will be irreparably injured if the stay is not reimposed. Neither WaMu nor 429 Gregory Associates, LLC will be measurably harmed. WaMu will receive full payment from the sale by the Trustee. The funds paid to the Sheriff by 429 Gregory Associates, LLC will be refunded. Concededly, 429 Gregory Associates, LLC will not realize its anticipated profit from resale of the Property. However, it is well understood that purchasing property at foreclosure sales is a risky investment opportunity. Among the risks faced is the prospect that the purchased property may be redeemed. In this instance, sale of the Property by the Chapter 7 Trustee is not measurably different from redemption. Finally, the public interest is served rather than violated. Creditors will be paid, and the Debtor will likely receive funds as well. Moreover, making the reimposition of the stay effective retroactively is essential to afford the relief granted to the Debtor under Rule 60(b)(1).

**CONCLUSION**

**\*6** Pursuant to Rule 60(b)(1) the Stay Relief Order may be vacated. As a consequence, the stay must be viewed as in effect when the Sheriff's Sale occurred. Consequently, the Sheriff's Sale is void as in violation of the stay imposed by 11 U.S.C. § 362. Additionally, under 11 U.S.C. § 105(a), this Court has the authority to reimpose the stay retroactive to September 18, 2006, the date the Stay Relief Order was entered.

**All Citations**

Not Reported in B.R., 2007 WL 880598

---

End of Document                             © 2025 Thomson Reuters. No claim to original U.S. Government Works.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| **BERNARD LERICHE** | : | HEARING: December 4, 2025 – 11:00 AM |
| Debtor | : | No. 25-12046(djb) |

### CERTIFICATE OF SERVICE

I, William J. Levant, Esquire do hereby certify that on November 21, 2025, I did send a copy of the foregoing Memorandum of Law to the following, by First Class Mail (except as noted):

Bernard Leriche                                    (first class mail)
3878 Lima Avenue
Feasterville, PA 19053

Brad Sadek, Esquire                           (served by ECF)
Counsel for the Debtor

Kenneth E. West, Esquire                  (served by ECF)
Chapter 13 Trustee

Office of the US Trustee                      (served by ECF)

Respectfully submitted,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By:    */S/ William J. Levant, Esquire*
William J. Levant, Esquire
910 Harvest Drive, 2nd Floor
Post Office Box 3037
Blue Bell, PA 19422
(610) 941-2474
(610) 684-2020 – Telecopier
wlevant@kaplaw.com
Attorneys for Philadelphia Federal Credit Union